UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No.:   CV 14-09670 AB (ASx) | Date:   June 3, 2015 |

Title:   Sheila Cruz, *et al.* v. Anheuser-Busch, LLC

---

Present: The Honorable   ANDRÉ BIROTTE JR.

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**   [In Chambers] Order GRANTING A-B's Motion to Dismiss

    Pending before the Court is Defendant Anheuser-Busch, LLC's ("A-B") Motion to Dismiss Plaintiffs Sheila Cruz, Deborah Esparza, and Catherine Silas's First Amended Complaint ("FAC").   (Motion, Dkt. No. 13.)   Plaintiffs filed an Opposition and A-B filed a Reply.   (Opposition, Dkt. No. 23; Reply, Dkt. No. 25.)   Subsequently, the Parties requested that the Court permit supplemental briefing to clarify certain arguments. (Dkt. No. 26.)   The Court granted the stipulation and the Parties filed such briefs. (Dkt. Nos. 27, 28, 29.)   The Court took this matter under submission on March 18, 2015.   (Dkt. No. 31.)

    For the reasons discussed more fully below, the Court **GRANTS** the Motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' class action relates to several Bud Light Lime Lime-A-Rita products (the "Rita Products").[1] (*See* First Amended Complaint ("FAC"), Dkt. No. 1, Exs. A Part 2, A Part 3.)

A-B produces the Rita Products. (*Id*. at ¶ 16.) Plaintiffs are consumers of the Rita Products, and on numerous occasions, they purchased the Rita Products from different stores in the Los Angeles area. (*Id*. at ¶¶ 1-3, 15.) These products are purchased in 12-pack or 18-pack quantities.[2] (*Id*. at ¶¶ 20, 21.) Each Rita Product bears the Bud Light Lime logo. (Edward M. Crane Declaration, Dkt. Nos. 15-18, Exs. 1-33.)[3] Plaintiffs allege that incorporating the word "light" on the Rita Products is misleading because it leaves an impression that these products are "low in calories and carbohydrates." (FAC, ¶¶ 1-4, 39.) The Rita Products contain about 192-220 calories and about 21.9-23.6 grams of carbohydrates per 8 fluid ounces which is allegedly more calories and carbohydrates per fluid than any other A-B product. (*Id*. at ¶¶ 1, 43.) Because of this comparison, Plaintiffs believe the Rita Products are not in fact "light" products. Plaintiffs also allege that a significant amount of the calories and carbohydrates within the Rita Products come from high fructose corn syrup which is not a named ingredient on the Rita Products' labels. (FAC, ¶¶ 47-56.) Plaintiffs apparently claim that A-B was under a duty to disclose this ingredient on the Rita Products' cans and packaging because A-B markets these beverages as "light" products. (*Id*. at ¶ 48.) The can labels on the Rita Products only disclose its nutrient contents, not its ingredients. (Crane Decl., Exs. 1-33.) None of this information is disclosed on the Rita Products' outer packaging. (FAC, ¶¶ 39, 48, 87.) If A-B disclosed this ingredient and its nutrient contents on the packaging, Plaintiffs alleges that they would not have bought the Rita Products. (*Id*. at ¶¶ 47-48, 87, 122.)

---

[1] The Rita Products include the following products: Bud Light Lime Lime-A-Rita, Bud Light Lime Raz-Ber-Rita, Bud Light Lime Straw-Ber-Rita, Bud Light Lime Mang-O-Rita, Bud Light Lime Apple-Ahhh-Rita, and Bud Light Lime Cran-Brr-Rita. (*See* FAC, ¶ 2.)

[2] The Rita Products are served in 8, 12, or 25 fluid ounce cans. (Edward M. Crane Declaration, Dkt. Nos. 15-18, Exs. 1-33.)

[3] The Court takes judicial notice of the Rita Products' labels and packaging that is attached to the Parties' exhibits. (Crane Decl., Exs. 1-33; Caleb Marker Declaration, Dkt. No. 24, Exs. B-D.) Plaintiffs' complaint is premised on the representations affixed on these labels. (*See* FAC.); *cf. U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). Consequently, the Court considers these exhibits as part of the complaint and assumes that all contents therein as true for purposes of this Motion.

Based on these depictions and omissions, Plaintiffs initiated this class action against A-B in Superior Court.[4] Specifically, Plaintiffs allege violations for the following causes of action: Violation of the Unfair Competition Law ("UCL"), Unlawful Prong (Cal. Bus. & Prof. Code § 17200 *et seq.*); Violation of the UCL, Unfair and Fraudulent Prong (Cal. Bus. & Prof. Code § 17200 *et seq.*); Violation of the False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500 *et seq.*); Violation of the Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750 *et seq.*); Breach of Express Warranty. (FAC.) The putative class includes "[a]ll persons who purchase any package quantity" of the Rita Products. (*Id*. at ¶ 59.) The prayer for relief asked for, *inter alia*, an award of restitution and disgorgement of profits from the Rita Product purchases. (*Id*. at ¶ 130.) The prayer for relief also seeks an injunction to prevent A-B from branding the Rita Products as "light" products. (*Id*.)

A-B removed this action to federal court based on federal jurisdiction of the Class Action Fairness Act. (Dkt. No. 1.) A-B now moves to dismiss all four of Plaintiffs' claims with prejudice under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (*See* Mot.)

## II. LEGAL STANDARD

A complaint survives a motion to dismiss under Rule 12(b)(6) if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief," which does not require "detailed factual allegations," but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 1949 (2009). A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988); *accord Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) ("A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"). In other words, a complaint must allege facts sufficient to raise a right to relief that rises above the level of mere speculation and is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 1969 (2007).

Allegations of fact are taken as true and construed in the light most favorable to the nonmoving party. *See Newdow v. Lefevre*, 598 F.3d 638, 642 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 1612 (2011). In analyzing the sufficiency of the complaint, the Court

---

[4] Plaintiffs amended their complaint a few days after they filed this action in Superior Court. (*See* FAC.)

must first look at the requirements of the causes of action alleged.[5] *See Iqbal*, 556 U.S. at 675.

## III. DISCUSSION

A-B believes that applying the safe harbor doctrine to these facts warrants the dismissal of Plaintiffs' complaint. A-B also contends that even if the safe harbor doctrine does not apply, there is still nothing misleading or deceptive about the Rita Products' labels. The Court addresses A-B's arguments in turn but first addresses the Parties' dispute with regard to the regulating authority for the alcoholic beverage industry. Plaintiffs argue that the Rita Products are subject to the governing authority of the Federal Drug Administration ("FDA"). This argument would subject the Rita Products to additional regulations other than those currently imposed by the Alcohol and Tobacco Tax and Trade Bureau ("TTB") which is the current governing authority of alcoholic beverages. A-B asserts that the FDA does not have jurisdiction over the Rita Products. Instead, it is the TTB that is the appropriate regulating authority for these products.

### A. Regulatory Framework

After the Twenty-First Amendment repealed prohibition in 1933, Congress enacted the Federal Alcohol Administration Act ("FAA") which governs the packaging and labeling of alcoholic beverages. U.S. CONST. amend. XXI; 27 U.S.C. § 201 *et seq*. The Secretary of the Treasury prescribes the FAA regulations. 27 U.S.C. § 205 (e). To conform to the FAA and to participate in the interstate commerce of alcohol, one must display adequate information about the quality of the product while avoiding the display of falsities that may mislead consumers. *Wawszkiewicz v. Dep't of the Treasury*, 670 F.2d 296, 297-98 (D.C. Cir. 1981) (citing 27 U.S.C. § 205 (e)).

The Secretary of the Treasury delegated the rule making authority under the FAA to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). *Bronco Wine Co. v. Dep't of Treasury*, 997 F.Supp. 1309, 1311 (E.D. Cal. 1996). After the ATF was reorganized under the Homeland Security Act, the Treasury Department created the TTB. 6 U.S.C §§ 203; 212(a)(1); *Shah Bros., Inc. v. U.S.*, 751 F.Supp.2d 1303, 1311-12 (C.I.T.

---

[5] A-B argues that the Rule 9(b) heightened particularity standard for fraud applies to Plaintiffs' causes of action. (Mot., pp. 4-5.) Under Rule 9(b), a complaint alleging fraud or "the circumstances constituting fraud or mistake shall be stated with particularity," *i.e.*, "'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" Fed. R. Civ. P. 9(b); *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). Because the allegations in the FAC are sufficiently detailed to meet the particularity standard, the Court need not decide whether Plaintiffs' causes of action operate under Rule 9(b).

2010). In pursuit of protecting the public and collecting revenue, the TTB develops regulations, conducts product analysis, and ensures tax and trade compliance with the FAA.

Considering the possible overlap between the authority of the FAA and the Federal Food, Drug, and Cosmetic Act ("FDCA"), a district court was presented with a jurisdictional question—whether the FAA or the FDCA regulated the alcoholic beverage industry. *Brown-Forman Distillers Corp. v. Mathews*, 435 F.Supp. 5 (W.D. Ky. 1976). There, the FDA[6] attempted to issue regulations over the plaintiff's alcoholic beverage labels. *Id*. at 13. In analyzing the FAA and the FDCA, the court determined that Congress intended to grant exclusive jurisdiction over alcoholic beverage labeling to the ATF (now the TTB) when it enacted the FAA. *Id*. The FDA never appealed this decision, and the ruling still holds precedent.

Plaintiffs "believe that the reasoning behind *Brown-Forman* [cannot] survive the more than 40 years of subsequent law." (Opp., pp. 18-19.) According to Plaintiffs, either the FDA's regulations coexist with the TTB's regulations or the FDA controls. (*Id*. at p. 20.) The Court disagrees.

Plaintiffs urge the Court to take a profound step in allowing FDA regulations to apply to alcoholic beverages when *Brown-Forman* already clarified this issue. Plaintiffs utilize inapposite case law to support their point.[7] (*Id*. at pp. 19-20.) These arguments only make opaque what is already clear—the FAA has exclusive jurisdiction in

---

[6] The FDA is the agency that regulates the food, beverage, and drug industry under the FDCA.

[7] Plaintiffs cite to *Pom Wonderful LLC v. Coca-Cola Co.*, —U.S.—, 134 S.Ct. 2228, 189 L.Ed.2d 141 (2014) in support of conflating FDA regulations with the TTB regulations. (Opp., pp. 14-15.) Plaintiffs also contend that this case stands for the proposition that complying with the FAA does not preclude Plaintiffs from enforcing consumer protection laws and other FDA regulations. (*Id*.)

*Pom Wonderful* is wholly distinguishable from this case. The Supreme Court in *Pom Wonderful* focused on the possibility of bringing forth a Lanham Act claim when the product complies with the FDCA. 134 S.Ct. at 2241 (citing 21 U.S.C. § 301 *et seq.*). Despite the nearly exclusive enforcement authority vested in the FDCA and the FDA, the Supreme Court's holding struck down the defendant's preemption arguments and allowed the plaintiffs to bring forth its Lanham Act and unfair competition claims. 134 S.Ct. at 2236. Essentially, *Pom Wonderful* made clear that federal statutes do not preempt each other. *Id*.

Here, the first noteworthy distinction is the administrative authorities. *Pom Wonderful* considered a beverage governed under FDA while the Rita Products is a malt beverage governed under the FAA. Secondly, Plaintiffs are not bringing forth another federal cause of action that challenges the product's FAA compliance, similar to *Pom Wonderful*. The holding and logic of *Pom Wonderful* cannot be applied here, and Plaintiffs' reliance on this case law is misplaced.

regulating alcoholic beverages. *Brown-Forman*, 435 F.Supp at 13 (concluding that "[t]he statutes themselves demonstrate Congress' intention to place exclusive jurisdiction over the regulation of alcoholic beverage labeling in the Secretary of the Treasury, and through him the [ATF]."). Additionally, there is nothing in the 40 years of subsequent case law that persuades the Court to disagree with the *Brown-Forman* holding.[8]

### B. The Safe Harbor Doctrine Applies Here

A-B argues that its compliance with the TTB regulations automatically shields it from UCL, FAL, and CLRA liability under the safe harbor doctrine.

"Although the unfair competition law's scope is sweeping, it is not unlimited . . . ." *Cel—Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 83 Cal. Rptr. 2d 548, 973 P.2d 527, 541 (Cal. 1999). Where state or federal law "has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination." *Id.* Although this Circuit has applied the safe-harbor doctrine, courts must be mindful that the safe harbor rule does not bar a claim simply because a statute does not prohibit the challenged conduct. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1164 (9th Cir. 2012) ("When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor."); *cf. Cel—Tech*, 20 Cal. 4th at 182-183 ("There is a difference between (1) not making an activity unlawful, and (2) making that activity lawful.).

"It is well-established that both federal statutes and federal regulations properly adopted in accordance with statutory authorization form the basis of federal law." *Von Koenig v. Snapple Beverage Corp.*, 713 F.Supp.2d 1066, 1074 (E.D. Cal. 2010) (citations omitted). The TTB has exclusive jurisdiction in regulating the labels on alcoholic beverages because Congress expressly granted exclusive authority to the Treasury Department who in turn delegated its duties to the TTB. *See Brown-Forman*, 435 F.Supp at 13; *see also* 27 U.S.C. 205 (e). The TTB has enacted regulations specifically addressing the labeling of alcoholic beverage products. *See* 27 U.S.C. §§ 213-219. Other more specific regulations relating to the labeling of malt beverages (such as the Rita Products)[9] include 27 C.F.R. § 7.29(a)(1), which prohibits the labeling of any malt

---

[8] Plaintiffs also contend that the Rita Products are susceptible to both TTB and FDA regulations because the Rita Products presumably contain beer as one of its ingredients. (Opp., p. 21.) Plaintiffs do not cite to any authority that supports this argument. The TTB regulates alcoholic beverages. Beer is an alcoholic beverage. *See* 45 AM.JUR.2D *Intoxicating Liquors* § 9 (1999) ("When used in its ordinary meaning and without qualification, the term 'beer' implies a malt liquor and an intoxicating or alcoholic beverage.") (footnotes omitted). The Court does not see how Plaintiffs come to the conclusion that the FDA would regulate a product that contains beer.

[9] According to the TTB, the Rita Products are considered to be malt beverages. (Crane Decl., Ex. 34.)

beverage with "any statement that is false or untrue in any particular, or that, irrespective of falsity, directly or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression." 27 C.F.R. § 7.29(a)(1). In order to implement the foregoing, the TTB requires industry members to obtain a certificate of label approval ("COLA") from the TTB prior to the public release of the alcoholic beverage. 27 C.F.R. § 7.41(a).

A-B attached several exhibits that support its safe harbor contention.[10] A-B attached the TTB-issued COLAs that approve the labels on the Rita Products. (Crane Decl., Ex. 34.) These COLAs demonstrate the Rita Products' compliance with TTB regulations. The COLAs are issued in accordance with the TTB Ruling 2004-1 which is a policy that provides guidelines on how to ensure that labels who advertise calorie and carbohydrate content do not mislead the public. (*Id.* at Ex. 35 ("Ruling 2004-1").) The TTB Ruling 2004-1 informs alcoholic industry members about the updated requirements in displaying nutrient content information on their product labels. (*Id.*) A product's nutrient content is shown through a statement of average analysis which includes the calories, carbohydrates, protein, and fat within a serving size. (*Id.* at p. 7.) With respect to the words "light" and "lite," the Ruling permits such usage of the word as long as the product includes a statement of average analysis. (*Id.*) The TTB clarified its stance on disclosing a product's nutrient content in stating, "[a]ssuming that the cans or bottles or beer within the case, carton, or carrier are appropriately labeled with a statement of average analysis, there is no requirement that you also put a statement of average analysis on a malt beverage case, carton or carrier." (Crane Decl., Ex. 36 ("FAQ").)

Looking at the labels on the Rita Products, it is evident that the average analysis is listed near the can labels' bar code. (Crane Decl., Exs. 1-33.) A-B contends that its compliance with the TTB Ruling and the subsequent COLAs trigger the safe harbor provisions.

Plaintiffs argue that the safe harbor doctrine is inapplicable here because the TTB Ruling 2004-1 is not a formal adjudicative action that has the force of law warranting the application of the safe harbor doctrine. (Opp., p. 15.)

---

[10] The Court GRANTS A-B's Request to take Judicial Notice of the COLAs for the Rita Products, the TTB Ruling 2004-1 that outlines certain requirements in applying for a COLA, and the TTB Ruling 2004-1's "Frequently Asked Questions" ("FAQ") web page on the TTB official government website. (Crane Decl., Exs. 34, 35, 36); *cf.* Fed. R. Evid. 201(b)(1) (A court may take judicial notice of a fact "not subject to reasonable dispute" that is "generally known within the territorial jurisdiction of the court.").

In order to determine if the safe harbor doctrine is applicable, the Court must assess the TTB Ruling 2004-1 and the COLAs.

### 1. The Court Considers the Certification of Label Approval to be a Formal Rulemaking Procedure

Courts give broad deference to an agency interpretation as long as it meets the threshold of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778 (1984). The historic Supreme Court case created a framework in determining an agency's authority and whether an agency's actions have the effect of federal law. *Tam v. F.D.I.C.*, 830 F.Supp.2d 850, 860 (C.D. Cal. 2011). "The first step under the *Chevron* analysis is to determine 'whether Congress has directly spoken to the precise question at issue.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009) (quoting *Chevron*, 467 U.S. at 842). "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron*, 467 U.S. at 843 n. 9. Courts only intervene when an agency has exceeded the authority Congress delegated to it. With respect to agency rulemaking, the Supreme Court clarified the *Chevron* deference in *U.S. v. Mead Corp.*, 533 U.S. 218, 230, 121 S.Ct. 2164 (2001). "It is fair to assume that Congress contemplates administrative action with the effect of law when it provides for a relatively formal administrative procedure tending to foster the fairness and deliberation that should underlie a pronouncement of such force." *Id.* Once it is determined that Congress has delegated such a "force of law," courts decide whether the agency acted with such force under the agency's pronouncements. *Id.* at 234.

In the instant case, Plaintiffs' arguments focus on the informality of the TTB Ruling 2004-1. (Opp., pp. 15-16.) Because the Ruling explicitly states, "pending rulemaking on this matter, we are issuing this interim policy[,]" Plaintiffs believe that this Court should not treat it as a final rule that permits A-B's conduct as required under the safe harbor provision. (*Id.*); *cf.* (Ruling 2004-1, p. 2.) The Court does not treat this Ruling as a final rule because the Ruling clearly uses terms that diminish its effect of law. (Ruling 2004-1, p. 2 ("pending rulemaking on this matter . . .").) Instead, it is the COLAs that are considered the rulemaking authority here which trigger the safe harbor provision. Plaintiffs neglect to address the administrative force of the COLAs. They apparently presume that A-B's safe harbor arguments solely rest on the TTB Ruling 2004-01 but it is the COLAs that have the force of law here. As the governing body within this industry, the TTB is given preapproval authority to issue COLAs to endorse a label's compliance with the FAA before the label is released to the public. *See generally* 27 C.F.R. § 7.41. The TTB Ruling 2004-1 is used as guidance "with regard to pending applications for [COLAs]." (Ruling 2004-1, p. 12 ("[TTB] will consider the

use of any advertisements inconsistent with this ruling to be in violation of the FAA Act and its implementing regulations.").)   This Ruling provides members of the alcohol industry, such as A-B, with guideposts as they prepare to apply for COLAs.   Here, in complying with the TTB Ruling 2004-01, A-B properly applied for preapproval of the Rita Products' labels.   Subsequently, the TTB approved A-B's application and issued the COLAs.   (Crane Decl., Ex. 34 ("Approved pending rulemaking on light (lite) and carbohydrate representations.   See TTB Ruling 2004-1.").)

Tellingly, Plaintiffs do not challenge the rulemaking authority of the COLAs.  *See* 27 U.S.C. §§ 205 (e), 215; *cf.* 27 C.F.R. §§ 7.29, 7.41.   Congress spoke to this exact issue of regulating the alcoholic beverage labeling industry when it enacted the FAA. The FAA authorized the Secretary of the Treasury to prescribe the FAA regulations. The Secretary of the Treasury delegated its rulemaking authority to the TTB who then, in turn, promulgated a series of regulations within the alcoholic beverage industry.   6 U.S.C §§ 203; 212(a)(1); 58 Fed. Reg. 21228-01.   This delegation renders TTB's regulations with the exclusive effect of federal law.  *cf. Chevron*, 467 U.S. at 843 n. 9 ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."); *accord Mead*, 533 U.S. at 230; *Bronco Wine Co.*, 997 F.Supp. at 1311. The COLA regulation is consistent with the statutory objective of the FAA—prohibit false or deceptive brand names from harming consumers and competitors.  *Adolph Coors Co. v. Brady*, 944 F.2d 1543, 1547 (10th Cir. 1991) (The intent of the FAA is to eliminate practices "that Congress had judged to be unfair and deceptive . . . ."). Plaintiffs do not, and cannot, dispute this "relatively formal administrative procedure" and the effect of law COLAs embody.  *Mead*, 533 U.S. at 230.   Nor can Plaintiffs argue that the TTB exceeded its statutory authority in issuing these COLAs to the Rita Products.   Therefore, in receiving COLAs for its can labels, the Court finds that the labels on the Rita Products are permitted under federal law.   And because Plaintiffs' causes of action conflict with the TTB's approval of the Rita Products' labels, the safe harbor doctrine insulates A-B from liability.[11]   *Davis*, 691 F.3d at 1164 ("When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." (citing *Cel—Tech*, 20 Cal. 4th at 182)).

---

[11] Plaintiffs also attempt to circumvent the safe harbor doctrine in arguing that the TTB never reviewed or approved the type size, color, or prominence of the Rita Products' can labels when it issued out the COLAs.   (Opp., pp. 16-17.)   Essentially, Plaintiffs are questioning TTB's review of the Rita Products' can labels because according to Plaintiffs, the statement of average analysis should be "more prominent" than the Bud Lime Light logo.   Plaintiffs' argument is unpersuasive and the Court defers to the TTB in issuing the COLAs.  *Chevron*, 467 U.S. at 842.

On this basis alone, A-B's Motion should be granted. However, a review of the complaint further reveals that Plaintiffs have failed to set forth a claim under California law.

### C. Plaintiffs' Claims Are Not Actionable Under California Law

Assuming Plaintiffs' allegations are true, their complaint does not amount to a cognizable claim for deceptive or misleading labeling.

Plaintiffs' claim under the FAL is defined to include any statements, pictures, or labels made in connection with the sale of goods or services that is likely to deceive the reasonable consumer. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). A UCL action defines unfair competition to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the FAL]." *See* Cal. Bus. & Prof. Code § 17200; *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 312, 93 Cal. Rptr. 3d 559 (Cal. 2009). Under the CLRA, a defendant is liable if it misrepresents its goods to contain certain characteristics, uses, or benefits that the goods do not have or advertises goods intending not to sell them as advertised. Cal. Civ. Code § 1770(a) (5), (7), (9) and (16).

"To state a claim under either the Unfair Competition Law [ ] or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *In re Tobacco II Cases*, 46 Cal. 4th at 312; *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 661 (C.D. Cal. 2014) (citations omitted). As articulated in the *Lavie* Court,

> '[l]ikely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."

*Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508, 129 Cal. Rptr. 2d 486 (Cal. App. 2003). Acting reasonably under the circumstances is measured through vantage point of a reasonable consumer. *Gerber Prods. Co.*, 552 F.3d at 938. Because the reasonable consumer standard raises questions of fact, such questions may be resolved on a motion to dismiss only in "rare situation[s]." *Id.* at 939. This Court finds this case to be one of those rare circumstances.

Here, the logo at issue is the Bud Light Lime logo that is placed on the Rita

Products. (Crane Decl., Exs. 1-33; Marker Decl., Exs. B-D.) At the point of sale, Plaintiffs assumed the Rita Products were low in calories and carbohydrates because of the term "light" in the Bud Light Lime logo. (*See* FAC.) Plaintiffs allege that this term suggests that this product is a "light" product which means the product is low in calories and carbohydrates. (*Id.*)

The Parties have not defined the term "light" presumably because the FAA and the TTB regulations do not contain such a definition in the context of malt beverages. (*See generally* Mot., Opp., Reply.) The TTB Ruling 2004-1 does mention "light" as a term of caloric representation. (TTB Ruling 2004-1, p. 11.) That is the fullest extent of the meaning of "light" with respect to malt beverages. "In the absence of such a definition, we construe a statutory term in accordance with its ordinary or natural meaning." *FDIC v. Meyer*, 510 U.S. 471, 477, 114 S.Ct. 996 (1994). First looking at its natural meaning, the term "light" in this context is defined as a product that "contain[s] fewer calories than others of its kind." WEBSTER'S THIRD COLLEGE EDITION DICTIONARY 781 (1988). According to Plaintiffs, a reasonable consumer construes the term "light" to stand for a "product [that] has fewer carbohydrates, or less fat than other similar foods."[12] (Opp., p. 21.) One of the FDA's definitions of a "light" product is one where the "number of calories is reduced by at least one-third (33 1/3 percent) per reference amount customarily consumed compared to an appropriate reference food." 21 C.F.R. 101.56(b)(2)(ii).

From the Court's perspective, the adjective "light" appears to be a descriptor that compares one product of lower calorie intake to another similar product of full calorie intake. *Henri's Food Products Co., Inc. v. Tasty Snacks, Inc.*, 817 F.2d 1303, 1305 (7th Cir. 1987) ("That is, 'light' described a certain quality of that type of beer as less filling with reduced calories." (citation omitted). For example, a product like Miller has a lower calorie alternative, Miller Lite. *Miller Brewing Co. v. Carling O'Keefe Breweries of Canada, Ltd.*, 452 F.Supp. 429, 435 (W.D.N.Y. 1978) ("[Miller Lite] has one-third fewer calories than Miller's regular beer . . . ."). Coca-Cola has its lower calorie alternative, Diet Coke. *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 696 F.Supp. 97, 119 (D. Del. 1988) ("[T]he only compositional similarity between new Coke and Classic Coke is that both are highly caloric relative to [D]iet Coke."). More applicable here is a product like Budweiser which has a lower calorie alternative called Bud Light. BUDWEISER'S SPECIFICATIONS PAGE, http://www.budweiser.com/our-beers/budweiser.html (last visited May 15, 2015) (145 calories per 12 fluid ounces); *cf.* BUD LIGHT'S SPECIFICATIONS PAGE,

---

[12] Plaintiffs use FDA regulations in making this argument. (Opp., p. 21.) Although the Court already found that the FDA does not regulate the alcoholic beverage industry, Plaintiffs' FDA contentions are useful in defining "light."

http://www.budlight.com/our-beers/light-beer.html (last visited May 15, 2015) (110 calories per 12 fluid ounces).[13]   It is evident that a "light" product signifies a lower calorie option which one would reasonably measure against the product's full calorie counterpart.

One cannot apply this logic to the case at bar because Plaintiffs have not identified the full calorie counterpart of the Rita Products.[14]   Without another product of its kind to compare the Rita Products to, the Court cannot objectively determine whether the product's use of the term "light" is a method of deception.   Perhaps, a plausible full calorie counterpart to compare the Rita Products to would be a product containing Budweiser (the full calorie counterpart of Bud Light Lime).   But Plaintiffs do not present such a comparison because such a beverage does not exist.   Instead, Plaintiffs' Rita Product comparisons are to other margarita products and other A-B beverages.   This is not a fair comparison.   Without a full calorie counterpart, Plaintiffs' allegations fail to state an adequate claim.

Plaintiffs also fail to answer a vital question—how many calories and carbohydrates did they expect the Rita Products to contain?   By not answering this question, Plaintiffs' subjective expectation—expecting the Rita Products to contain fewer calories and carbohydrates than it contains—is unreasonable.   *Lavie*, 105 Cal. App. 4th at 508   ("'[l]ikely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner . . . .").   Such subjective expectations warrant dismissal.

Plaintiffs' complaint does not adequately allege a claim where a reasonable consumer is likely to be deceived by the Rita Products.   *Lavie*, 105 Cal. App. 4th at 508 ("'[l]ikely to deceive' implies more than a mere possibility…").   Their claims only point to A-B's accurate representations, not misrepresentations or omissions.   It is undisputed that each of the Rita Products discloses the precise amount of calories and carbohydrates

---

[13] Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the information readily available on these A-B products' homepages.

[14] Plaintiffs acknowledge that the Rita Products do not contain a full calorie counterpart.   (Opp., p. 4.) They argue that because the Rita Products do not have a full calorie version, A-B should not market the Rita Products as a "light" product.   The Court disagrees.   The Rita Products' packaging, can labels, and advertisements do not market representations of a "light" product—a product that is low in calories and carbohydrates.   (Crane Decl., Exs. 1-33; Marker Decl., Exs. B-D.)   At most, the term "light" could be interpreted to mean (from the perspective of a reasonable consumer) an alcoholic beverage comprised of a blend of margarita mix and Bud Light Lime.

as required under the TTB's statement of average analysis. Yet, despite the accuracy, Plaintiffs claim to be misled because of the term "light." Plaintiffs heavily rely on *Marty v. Anheuser-Busch Companies, LLC*, 43 F.Supp.3d 1333, 1345 (S.D. Fla. 2014). In *Marty*, the court examined the packaging of Beck's beer. *Id*. at 1333. The interior of the Beck's beer packaging contained a "Product of USA" disclaimer while the exterior of the packaging displayed representations that could mislead consumers into believing the beer was brewed in Germany, *e.g.*, "Originated in Germany." *Id*. at 1333. Although the packing conformed to TTB regulations, the court determined that the advertising could mislead a reasonable consumer because you had to open the package in order to locate the "Product of USA" disclaimer. *Id*. at 1344-45. Plaintiffs contend that the analysis in *Marty* applies here because the nutrient content is not displayed on the outer packing of the Rita Products, it is only displayed on the can labels. (Opp., p. 2.) Plaintiffs allege that they relied on the Rita Products' outer packing at the point of sale, only to discover after they already made their purchase, that the Rita Products contained more calories and carbohydrates than they expected from a "light" product. (Opp., p. 4.) These arguments and alleged facts are wholly distinguishable from *Marty*. Looking at a carton of a Rita Product, one simply sees an image of a Rita Product being poured into the glass and the Bud Light Lime logo accompanied by the phrase "Margarita with A Twist." (Marker Decl., Ex. B.) All that could be reasonably inferred by a reasonable consumer is that this beverage contains some combination of a margarita and Bud Light Lime. Nothing in the packaging relates to caloric content nor is there any suggestion that the beverage is a "light" product. Thus, reliance on *Marty* is misplaced.

Plaintiffs' fraudulent omission allegations are equally problematic. Plaintiffs claim that A-B "failed to disclose that the [Rita Products] actually contain …" high fructose corn syrup and "between 192-220 calories per 8 fluid ounces …" on its packaging. (FAC, ¶¶ 8, 46, 48.) As mentioned above, the Rita Products' can labels display its nutritional contents near the label's bar code, and the TTB does not require any additional disclosures beyond that. (Crane Decl., Exs. 1-33, FAQ ("[a]ssuming that the cans or bottles or beer within the case, carton, or carrier are appropriately labeled with a statement of average analysis, there is no requirement that you also put a statement of average analysis on a malt beverage case, carton or carrier.").) Plaintiffs also do not point to any TTB regulation or any other alcoholic beverage regulation that requires A-B to disclose ingredients such as high fructose corn syrup. The only mandatory ingredients that the TTB requires malt beverages to list are non-beverage ingredients, and there are no allegations that claim high fructose corn syrup to be a non-beverage ingredient.[15] 27 C.F.R. § 7.22(b). Without a statutory mandate, A-B cannot be held

---

[15] High fructose corn syrup and other alternative natural sweeteners are common beverage ingredients. *Snapple Beverage Corp.*, 713 F.Supp.2d 1066, 1070; *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 988 F.2d 414, 429 (3d Cir. 1993).

liable if it were not required to disclose its ingredients.

These allegations as a whole do not meet the reasonable consumer threshold nor are the allegations plausible enough to survive a motion to dismiss. *Hyland's Inc.*, 300 F.R.D. at 661. ("'[I]njury is shown where the consumer has purchased a product that is marketed with a material misrepresentation….'"); *Balistreri*, 901 F.2d at 699 (dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."). Because Plaintiffs' complaint is rife with deficiencies, the Court finds that Plaintiffs' causes of action under UCL, FAL, and CLRA fail as a matter of law.

### D. Plaintiffs Fail To Allege Sufficient Facts To Support A Claim For Breach of Express Warranty

The Court has already determined that the safe harbor doctrine bars Plaintiffs claims but if the doctrine were inapplicable here, then it is still appropriate for this Court to dismiss Plaintiffs' claim for breach of express warranty.

To state a claim under a theory of breach of an express warranty, Plaintiffs must allege facts sufficient to show that A-B made affirmations of fact or promises that became part of the basis of the bargain between the parties. Cal. Com. Code § 2313(1); *Pisano v. Am. Leasing*, 146 Cal.App.3d 194, 197-98, 194 Cal. Rptr. 77 (Cal. App. 1983).

The depictions on the Rita Product labels make no explicit guarantee about the product being low in calories or low in carbohydrates. *McKinniss*, 2007 WL 4766525, at *5 (citations omitted). It is unreasonable for Plaintiffs to believe that A-B guaranteed that the Rita Products would contain a particular amount (an amount they fail to specify) of calories and carbohydrates based on the term "light." Moreover, the labels do not display representations that are contrary to the nutritional contents of the Rita Products. For instance, Plaintiffs do not allege that the statement, "Margarita With A Twist," conflicts with the actual ingredients of the Rita Products or that the margarita-style glass image somehow guaranties a particular calorie amount. Plaintiffs' allegations simply blindly surmise that a promise that the Rita Products would contain an unknown amount of calories and carbohydrates based on the term "light." That is not a promise, and even if it was, Plaintiffs fail to properly allege how this promise was breached considering the accurate disclosure of the Rita Products' nutrient contents.

Accordingly, the Court dismisses Plaintiffs' cause of action for breach of express warranty.[16]

---

[16] The Parties' arguments also focus on Plaintiffs' prayer for injunctive relief. Because Plaintiffs'

### E. Plaintiffs' Request for Leave to Amend Is Denied

Leave to amend is appropriate unless it is clear that the complaint cannot be cured in alleging different facts. *Silva v. Di Vittorio*, 658 F.3d 1090, 1105 (9th Cir. 2011). In ruling on a request for leave to amend, courts consider bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *See Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir. 2003); *see also Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

Plaintiffs have already amended their complaint. "[A] district court has broad discretion to grant or deny leave to amend, particularly where the court has already given a plaintiff one or more opportunities to amend his complaint to allege federal claims." *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980). It is evident from not only Plaintiffs' own allegations but also from the foregoing analysis that Plaintiffs cannot overcome the deficiencies in their complaint. Plaintiffs also fail to present any amendment that would cure the defects herein. A leave to amend would be futile at this stage. *Ashcroft*, 348 F.3d at 818 ("Futility alone can justify the denial of a motion to amend.").

Accordingly, the Court **DENIES** Plaintiff's request for leave to amend.

### IV. CONCLUSION

Based on the reasons articulated above, the Court concludes that Plaintiffs have not stated a claim that could plausibly prove that the labels on the Rita Products could likely deceive a reasonable consumer. Amendment to these claims would also be futile. Consequently, the Court **GRANTS** A-B's Motion to Dismiss **WITH PREJUDICE**. The Court also **VACATES** the June 8 Scheduling Conference. (Dkt. No. 35.)

**IT IS SO ORDERED.**

---

allegations fail to present a viable claim under any of their causes of action, the Parties' prayer for relief arguments are deemed moot.